IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DOUGLAS PENNINGTON,

                 Plaintiff,

                                                  CV 07-1816-ST

      v.

                                 FINDINGS AND RECOMMENDATION

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

     Plaintiff, Douglas Pennington, filed this action against defendant, Commissioner of the

Social Security Administration, seeking review of the Commissioner's decision denying his

1 - FINDINGS AND RECOMMENDATION

request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").
On January 29, 2009, Judge Garr M. King remanded this case to the Commissioner for further
administrative proceedings consistent with the parties' Stipulated Motion to Remand Case to
Agency (dockets #22 & #24).

On April 13, 2009, Pennington's attorney submitted a Stipulated Application for Fees
Pursuant to the Equal Access to Justice Act ("EAJA") (docket #26).  On April 16, 2009, Judge
King granted that application and awarded EAJA attorney fees in the full amount requested of
$4,850.09 (docket #38).

On May 13, 2010, Pennington's attorney filed an Unopposed Motion for Attorney's Fees
Under 42 USC § 406(b) (docket #29), seeking $11,897.00 for his work performed before this
court.  For the reasons set forth below, the motion should be GRANTED.

## LEGAL STANDARD

In Social Security cases, attorney fees may be awarded under both the EAJA and 42 USC
§ 406(b).  Congress enacted the EAJA in 1980 to permit recovery of attorney fees in those cases
where "the Government's position in the litigation was not 'substantially justified.'"  *Gisbrecht*,
*v. Barnhart*, 535 US 789, 796 (2002), citing 28 USC § 2412(d)(1)(A).  EAJA fees are
determined by the time spent multiplied by a capped hourly rate.  *Id*, citing 28 USC
§ 2412(d)(2)(A).  In contrast, pursuant to 42 USC § 406(b)(1)(A), "the court may determine and
allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent
of the total of the past-due benefits to which the claimant is entitled by reason of such
judgment."  Such fee awards are paid from a claimant's retroactive benefits award.  *Id*.  In
attorney fee motions under 42 USC § 406(b), the real party in interest is the attorney, not the
claimant.  *Id* at 798 n6. An attorney receiving a § 406(b) fee award may not seek any other

2 - FINDINGS AND RECOMMENDATION

compensation from a claimant. *Id* at 796. Accordingly, when a court approves both an EAJA fee and a § 406(b) fee, the claimant's attorney must refund to the claimant the smaller amount of the two awards. *Id*.

The § 406(b) fee is not determined by the lodestar method which governs fee-shifting disputes. *Id* at 801-01. Instead, contingency fee agreements not exceeding 25% of the claimant's retroactive benefits are enforceable under § 406(b) subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id* at 807. The claimant's counsel bear the burden to establish the reasonableness of the fee. *Id*.

The Ninth Circuit has articulated four factors derived from *Gisbrecht* that district courts should use in determining whether a reduction from the contingent fee agreement is appropriate:

1. the character of the representation, specifically, whether the representation was substandard;

2. the results the representative achieved;

3. any delay attributable to the attorney seeking the fee; and

4. whether the benefits obtained were "not in proportion to the time spent on the case" and raise the specter that the attorney would receive an unwarranted windfall.

*Crawford v. Astrue*, 586 F3d 1142, 1151-53 (9th Cir 2009) (citations omitted).

In other words, the court is empowered to exercise discretion to ensure that the claimant is protected from having to surrender retroactive disability benefits in a disproportionate payment to counsel. *Id* at 1151, citing *Gisbrecht*, 535 US at 808.

///

## **FINDINGS**

3 - FINDINGS AND RECOMMENDATION

I.    **Contingency Fee Agreement**

The first step in the *Gisbrecht* analysis is to examine the contingent fee agreement to determine if it is within the statutory 25% ceiling of § 406(b).  Although Pennington's attorney has not submitted a copy of the fee agreement, he represents that it specifies payment equal to 25% of any past-due benefits resulting from the claim.  Since this is the normal fee agreement for social security appeals, this court has no reason to question this representation.  Such an agreement falls within the statutory limits, and the record reveals "no evidence of fraud or overreaching in the making of the 25% contingent-fee agreement."  *Id*.

The next step is to confirm that the requested fee does not exceed the 25% ceiling of § 406(b).  Pennington's attorney has submitted a copy of the Notice of Award which awarded past-due benefits to Pennington of $47,588.00 for April 2003 through July 2009.  Based on that amount, a 25% contingency fee is $11,897.00, the same amount requested in this motion.

II.    **Reasonableness Determination**

A.    **Character of the Representation**

Substandard performance by a legal representative may warrant a reduction in a § 406(b) fee award.  *Gisbrecht*, 535 US at 808; *Crawford*, 586 F3d at 1151.  The record does not suggest that the performance by Pennington's attorney was substandard.  He prepared a Complaint (docket #2) and a 20 page Opening Brief (docket #19), focusing on whether the ALJ erred by improperly relying on flawed vocational testimony identifying jobs which require fine manipulation, improperly discrediting Pennington's testimony, improperly rejecting the lay witness statements, failing to fully and fairly develop the record, and failing to consider Pennington's stress tolerance.  These arguments were supported by accurate and relevant

4 - FINDINGS AND RECOMMENDATION

citations to the administrative record and legal authority and were sufficient to persuade

defendant to stipulate to a remand to:

> further consider the medical reports from the claimant's treating sources at
> Eagle Point Medical Center; further address the claimant's alleged
> medication side effects; consider the State agency medical consultants'
> opinions (exhibits 5F/17 and 6F); reassess the lay witness statements; if
> necessary, obtain evidence from a medical expert to clarify the nature and
> severity of the claimant's impairments; reassess the claimant's residual
> functional capacity; and obtain supplemental vocational expert testimony.

Docket #22-1.

As an example of substandard representation, *Gisbrecht* cites *Lewis v. Sec'y of Health*

*and Human Servs.*, 707 F2d 246 (6th Cir 1983). *Lewis* considered the counsel's poor preparation

for hearings, failures to meet briefing deadlines, submissions of court documents void of legal

citations, and misconduct in overbilling the claimant to amount to substandard representation.

*Lewis*, 707 F2d at 248-50. The record in this case falls far short of that kind of substandard

representation. Thus, no reduction is warranted due to the character of the representation.

**B.    Results Achieved**

As a result of the efforts of Pennington's attorney, this court ordered remand for further

administrative proceedings which ultimately resulted in an award of benefits. However, an

award of benefits should not be viewed in isolation or always presumed to require a fee award of

25% of a claimant's retroactive benefits award.

> If obtaining benefits always supported awarding fees for the full twenty-
> five percent, it would make  irrelevant the other *Gisbrecht* factors and
> render perfunctory the trial courts' assigned task of "making
> reasonableness determinations in a wide variety of contexts[.]"

*Dunnigan v. Astrue,* Civil No. 07-1645-AC, 2009 WL 6067058, *12 (D Or Dec. 23, 2009),

quoting *Gisbrecht*, 535 US at 808.

5 - FINDINGS AND RECOMMENDATION

C.    **Dilatoriness**

A § 406(b) fee award may be reduced for delays in the proceedings attributable to the

claimant's attorneys.  *See Gisbrecht*, 535 US at 808; *Crawford*, 586 F3d at 1151.  This reduction

is appropriate "so that the attorney will not profit from the accumulation of benefits during the

pendency of the case in court."  *Gisbrecht*, 535 US at 808 (citation omitted).

Pennington's attorney sought three unopposed requests for extensions of time (dockets

#9, #12 & #15) from August 11 to November 3, 2008, a period of less than three months.  No

evidence suggests that any request was intended, even in part, to delay the proceedings.

The "excessive delay doctrine" has its roots in earlier cases denying 25% fee requests in

social security cases where several years passed between the completion of briefing and the

rendering of judgment by the district court.  *See Webb v. Richardson*, 472 F2d 529 (6th Cir 1972)

(over three years between completion of briefing and issuance of judgment by district court;

nearly 40% of the benefits accrued solely by reason of the inexcusable delay in rendering

judgment) and *Dearing v. Sect'y of HHS*, 815 F2d 1082 (6th Cir 1987) (following *Webb*; nearly

four years passed between filing and granting of summary judgment motion).  In those cases, the

Sixth Circuit found an abuse of discretion in allowing the statutory maximum attorney fee and

held that "[i]n no event should the fee exceed 25% of the past-due benefits that would have been

due if judgment had been rendered within three months of the submission of the [final brief]."

*Webb*, 472 F2d at 538; *see also Dearing*, 815 F2d at 1083-84.

The type and magnitude of delay at issue in *Webb* and *Dearing* is not present here.

Moreover, there is no indication that the delay occasioned by the requests for extensions of time

in this case were surreptitious efforts to maximize the attorney's fee award.  Because the delay

6 - FINDINGS AND RECOMMENDATION

was in no event excessive or potentially motivated by the attorney's desire to increase the
potential attorney fee award, no deduction for delay is warranted.

**D.**    **Proportionality of Benefits Awarded to Time Spent**

A § 406(b) award may be reduced if the benefits awarded to the claimant "are not in
proportion to the time spent on the case" by the claimant's attorney. *Crawford*, 586 F3d at 1151,
citing *Gisbrecht*, 535 US at 808.  In that regard, the court may consider the records of time
incurred by the attorney and a statement of the attorney's normal hourly fee in non-contingent
matters.  According to the EAJA fee application (docket #25-1), Pennington's attorney incurred
28.4 hours on this case.  Based on a review of the pleadings filed and issues raised, the number
of total hours spent on this case is not inherently unreasonable.

An award equal to 25% of past-due benefits results in an effective hourly rate for
Pennington's attorney of $418.91 ($11,897.00/28.4 hours).  This rate is more than the non-
contingent hourly rate of $300.00 charged by Pennington's attorney when working as a
consultant and expert witness on the subject of social security disability law.  Memorandum in
Support of Plaintiff's Motion (docket #30), p. 4 n5.  It also is more than the average hourly rate
of $242.00 and the median hourly rate of $222.00 for all attorneys in Portland in private practice
in the "other" category based on the Oregon State Bar 2007 Economic Survey.  Under a
traditional lodestar approach, an effective hourly rate of $418.91 is approximately 1.7 to 1.9
times the reasonable hourly rate for non-contingent matters and well outside a reasonable range.
However, the goal under § 406(b) is not to compensate attorneys strictly for time expended as
under lodestar approach, but to compensate them commensurately with the results achieved.

As Magistrate Judge Papak recently posited as a way to assess proportionality, "a
contingency fee award is disproportionately high where it disproportionately overcompensates

7 - FINDINGS AND RECOMMENDATION

for the pre-litigation risk of an unfavorable result." *Kovacevic v. Comm'r Soc. Sec. Admin.*, Civil No. 05-512-PK, 2010 WL 1406450, * 6  (D Or March 2, 2010 ).  But as he also acknowledges, this approach leaves open the questions of how to determine pre-litigation risk and how to avoid overcompensating that risk in order to avoid a windfall.

To a claim that was significantly less risky than the average claim, Magistrate Judge Papak has applied a risk factor "potentially as high as 40%." *Kovacevic*, 2010 WL 1406450 at *7.  Using $222.00 as the benchmark hourly rate, a 40% likelihood of winning results in a 2.5 multiplier (100/40) for an effective hourly of $555.00.

Pennington's attorney argues that the risk of non-payment justifies a contingency multiplier of 2.98 based on a 33.52% chance of prevailing (100/33.52).  This risk of winning benefits is based on the statistics for the 2007 fiscal year from the Office of Disability Programs as presented by the NOSSCR Social Security Forum (dockets #30, p. 4,  #30-2, p. 6).  This figure includes both the 5% of cases in which courts order an outright award of benefits and the 46% of cases in which the courts order a remand for further proceedings in which the claimants then establish entitlement to benefits in 62% of the remand proceedings.  Using this risk figure, a fee request of 2.98 (100/33.52) times the average and median hourly billing rates of $222.00 and $242.00 results in effective hourly rates of $661.56 and $721.16 respectively.

Pennington's attorney also requests a multiplier of 17/15 based on the 1998 OSB Survey establishing that Portland attorney spend 15% of their time on contingency matters, but derive 17% of their income from such matters.  This court fails to perceive any cogent reason why such data would result in a 17/15 multiplier.

Clearly Pennington's counsel undertook some risk in agreeing to represent Pennington in this appeal on a contingency fee basis.  That risk includes a review of the issues prior to the

8 - FINDINGS AND RECOMMENDATION

filing of the entire record by the agency.  Absent any information as to the pre-litigation assessment by Pennington's counsel of that risk, this court must rely on its own independent evaluation.  In other cases applying *Gisbrecht's* reasonableness test, Judge Haggerty recently awarded § 406(b) fees of $24,499 (20% of $122,495.00), *Carlson v. Astrue*, Civil No. 08-1202-ST (docket #40), and $9,684.75 (15% of $64,565.00), *Davis v. Comm'r*, Civil No. 07-6352-PK (docket #64).  In addition, Judge Mosman has awarded fees of $11,874.00 (12.5% of $94,992.00), *Dunnigan v. Astrue*, Civil No. 07-1645-AC (docket #52).  The fees requested here by Pennington's attorney of $11,789.00 are well within that range.  Thus, under any risk evaluation presented, this court concludes that an award of 25% of the past-due benefits awarded does not constitute disproportionate compensation in this case.

## RECOMMENDATION

Plaintiff's Motion for Approval of Attorney Fees Pursuant to 42 USC § 406(b) (docket #29) should be GRANTED in the sum of $11,897.00, an amount that is 25% of the retroactive benefits awarded.  If counsel has received the EAJA fee previously allowed of $4,850.09, then he is obligated to subtract that amount from this § 406(b) fee award.[1]

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 16, 2010.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

---

[1] *Jackson v. Comm'r of Soc. Sec'y*, 601 F3d 1268, 1272 (11th Cir 2010) (obligation to issue the required refund is the attorney's; the EAJA Savings Provision does not require courts to take action with respect to the refund).

9 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of July 2010.

s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

10 - FINDINGS AND RECOMMENDATION